**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-23144-BLOOM**

AMAL CRANE,

     Plaintiff,

v.

CHRISTINA MARIE DIRAIMONDO,
DIANE M. TRAINOR, ESQ.,
MATTHEW SIMON, CHRISTY L.
HERTZ, ESQ., KATIE SAGER, ESQ.,
and MATTHEW HARRISON CRANE,

     Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon four separate Motions to Dismiss: (1) Defendant

Christina Marie Diraimondo's ("Judge Diraimondo") Motion to Dismiss, ECF No. [29]

("Diraimondo's Motion"). Plaintiff Amal Crane ("Amal Crane") filed a Response in Opposition,

ECF No. [51], to which Judge Diraimondo filed a Reply, ECF No. [55]; (2) Defendants Matthew

Harrison Crane ("Matthew Crane"), Christy L. Hertz, Esq. ("Hertz"), and Katie Sager, Esq.'s

("Sager") Motion to Dismiss, ECF No. [33] ("Crane's Motion"). Amal Crane filed a Response in

Opposition, ECF No. [48], to which Matthew Crane, Hertz, and Sager filed a Reply, ECF Nos.

[58], [67]; (3) Defendant Matthew Simon's ("Simon") Motion to Dismiss, ECF No. [38] ("Simon's

Motion"). Amal Crane filed a Response in Opposition, ECF No. [49]; and (4) Defendant Diane M.

Trainor's ("Trainor") Motion to Dismiss, ECF No. [42] ("Trainor's Motion"). Amal Crane filed a

Response in Opposition, ECF No. [50], to which Trainor filed a Reply, ECF No. [56]. The Court

has reviewed the Motions, the supporting and opposing submissions, the record, the applicable

law, and is otherwise fully advised. For the reasons that follow the Motions are granted.[1]

## I.     BACKGROUND

In the Complaint, Amal Crane raises several claims relating to over four years of adverse

family law rulings in Miam-Dade County family court. *See generally* ECF No. [1]; *see also In Re:*

*The Marriage of: Matthew Harrison Crane and Amal Crane*, Case No. 2017-3528-FC-04 (Fla.

11th Cir. Ct.) ("State Action"). She sues Judge Diraimondo, the state court judge involved in the

State Action, "based on ongoing alleged constitutional and statutory violations." ECF No. [1] at

41. She sues her former husband, Matthew Crane, for allegedly "acting jointly with state actors

and private actors to deprive [Amal Crane] of federal rights" and for "participat[ing] as a private

co-conspirator in the conduct alleged" in the Complaint. *Id.* ¶ 13. She sues Hertz and Sager, both

attorneys who served as counsel for Matthew Crane in the State Action. *Id.* ¶¶ 11, 12. She sues

Trainor, who served as the court-appointed guardian *ad litem* for Amal Crane's minor daughter in

the State Action. *Id.* ¶ 9. Finally, she sues Simon, a licensed psychologist who served as the court-

appointed social investigator and psychological evaluator in the State Action. *Id.* ¶ 10.

The Complaint alleges First Amendment Retaliation via 42 U.S.C. § 1983 (Count I),

violation of Amal Crane's Fourteenth Amendment – Procedural Due Process rights via 42 U.S.C.

---

[1] Also before the Court are Amal Crane's Motion for Preliminary Injunction, ECF No. [3], and Renewed Consolidated Motion for Leave to Correct Material Reply-State Mischaracterizations in Defendant Judge Diraimondo's Reply [] and Defendant Diane M. Trainer's Reply [], ECF No. [66] ("Motion to File Sur-Reply"). In light of the Court's dismissal of this case against all Defendants, the Motion for Preliminary Injunction is denied as moot.

As to the Motion to File Sur-Reply, leave to file a sur-reply should generally only be allowed when "a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) (quoting *Fedrick v. Mercedes–Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D.Ga.2005)). Here, Amal Crane has provided no valid reason, merely pointing to her disagreements with various Defendants' characterizations of her arguments. Thus, the Motion to File Sur-Reply is denied.

§ 1983 (Count II), violation of Amal Crane's Fourteenth Amendment – Substantive Due Process rights via 42 U.S.C. § 1983 (Count III), violation of Amal Crane's Fourteenth Amendment – Equal Protection rights via 42 U.S.C. § 1983 (Count IV), violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") (Count V), Deprivation of Property without Due Process in violation of the Fourteenth Amendment rights via 42 U.S.C. § 1983 (Count VI), Conspiracy to Interfere with Civil Rights in violation of 2 U.S.C. § 1985(3) (Count VII), Supplemental State Law Claims including Abuse of Process, Intentional Infliction of Emotional Distress, and Civil Conspiracy (Count VIII). *See generally id.*

The Motions to Dismiss identified above are fully ripe.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quotation marks omitted); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of

subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.") (citation omitted)).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (S.D. Fla. 2023); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quoting *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (internal quotations omitted)). With regard to federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331; *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, the court may consider additional documents when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

## III.   DISCUSSION

### A.  Diraimondo's Motion

The Court finds that Diraimondo's Motion—and, by extension, the Complaint to the extent that it names Judge Diraimondo as a Defendant—can be resolved on the basis of judicial immunity. As such, the Court focuses on the parties' arguments regarding that doctrine.

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id*. Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity. *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983). Importantly, "[j]udicial immunity also generally extends to demands for injunctive and declaratory relief." *Juravin v. Rada*, No. 5:24-CV-618-PGB-PRL, 2025 WL 1688251, at *5 (M.D. Fla. May 27, 2025). And judicial immunity can warrant dismissal if it clearly applies on the face of the pleadings; in such a case, allowing leave to amend

would be an exercise in futility. *Austin v. McCann*, No. 22-13157, 2023 WL 3335312, at \*2 (11th Cir. May 10, 2023); *Hatcher v. Alabama Dep't of Hum. Servs., Child Support Enf't Div.*, 747 F. App'x 778, 782 (11th Cir. 2018).

Amal Crane's claims against Judge Diraimondo include the following:

- Count I: Amal Crane alleges that she engaged in protected First Amendment activity "by filing motions, petitions, and appeals" in the State Action, "including motions to enforce the appellate mandate, to compel financial discovery, to discharge void judgment liens, and to seek prohibition from the Third District Court of Appeal." ECF No. [1] ¶ 150. Plaintiff alleges that Judge Diraimondo retaliated against her, but she does not specify any actions taken by Judge Diraimondo. *Id.* ¶ 151.
- Count II: Amal Crane alleges that she was deprived of her procedural due process rights when Judge Diraimondo "entered an Order Appointing Guardian ad Litem bearing a February 4, 2022 timestamp, although the appointment was orally granted on February 8, 2022." *Id.* ¶ 158(a). Moreover, Amal Crane contends that she was deprived of her due process rights when Judge Diraimondo appointed Simon as social investigator, failed to rule on her November 12, 2024 ADA accommodation motion for over seventeen months, managed the docket asymmetrically, and entered the August 22, 2024 contempt order finding Amal Crane in contempt and ordering the surrender of her personal electronic devices. *Id.* ¶ 158(b)–(f). Amal Crane contends she was not afforded adequate notice or a meaningful opportunity to be heard with respect to these deprivations. *Id.* ¶ 159.
- Count III: Amal Crane alleges that Judge Diraimondo violated her substantive due process rights by not enforcing the resumption of her contact with her daughter, and that separation was not "narrowly tailored to any compelling or legitimate state interest." *Id.* ¶ 166. This deprivation, moreover, weas accomplished through coordinated conduct. *Id.* ¶ 167.
- Count IV: Amal Crane alleges that Judge Diraimondo subjected her to different treatment based on her sex and disabilities. *Id.* ¶ 173. Specifically, Judge Diraimondo denied Amal Crane's emergency motion to appear by Zoom but allowed Matthew Crane do so on a later date. *Id.* ¶ 174(a). Moreover, Judge Diraimondo engaged in disparate oversight of Amal Crane and Matthew Crane's respective parenting. *Id.* ¶ 174(c).
- Count V: Amal Crane alleges that she has multiple disabilities and requested "reasonable accommodations to ensure meaningful access to judicial proceedings." *Id.* ¶¶178, 179. One request was never ruled on by Judge Diraimondo, and another was denied. *Id.* ¶ 179. Furthermore, Judge Diraimondo required Amal Crane to participate in "critical proceedings . . . without accommodation for her documented disabilities." *Id.* ¶ 180. Moreover, Judge Diraimondo stated that she did not believe Amal Crane's panic attack had occurred. *Id.* ¶ 181.
- Count VI: Amal Crane contends that she possessed a protected property interest in her personal electronic devices and condominium, and Judge Diraimondo's

contempt order—which required Amal Crane to surrender her privately owned electronic devices—violated that right. *Id.* ¶¶ 186, 187. Furthermore, after Amal Crane moved to discharge judgment liens on her property, Judge Diraimondo denied the motion, further violating Amal Crane's Fourteenth Amendment right to due process before any deprivation of property. *Id.* ¶ 188.

- Count VII: Amal Crane alleges that all Defendants—including Judge Diraimondo—participated in a conspiracy to deprive her of constitutional rights based on sex-based and disability-based animus. *Id.* ¶ 196. Judge Diraimondo did so by not ruling on Amal Crane's first ADA accommodation motion and by denying another ADA accommodation motion. *Id.* ¶ 197(b). Judge Diraimondo further stated that she did not believe Amal Crane's reported panic attack occurred. *Id.* ¶ 197(d). Moreover, Amal Crane alleges Judge Diraimondo engaged in differential treatment between herself and Matthew Crane and Trainor, specifically with respect to "remote-appearance procedures, scrutiny of parenting conduct, enforcement of Administrative Order No. 26-04, and access to" information concerning her minor child. *Id.* ¶ 197(e).
- Count VII: Amal Crane asserts a claim for Intentional Infliction of Emotional Distress based, in relevant part, on Judge Diraimondo denying her motion to appear remotely, compelling her in-person attendance, and allowing her partner to be served with a subpoena upon arrival, as well as stating that she did not believe Amal Crane's panic attack had occurred. *Id.* ¶ 205. Amal Crane also asserts a claim for civil conspiracy. *Id.* ¶ 206.

Judge Diraimondo argues that each of these counts should be dismissed, because there is no doubt that she "was acting in her official judicial capacity" at all times material to the case. ECF No. [29] at 14. All of Amal Crane's claims relate to "official actions by Judge Diraimondo" and are therefore barred by judicial immunity. *Id.*

Amal Crane responds that the Complaint "repeatedly limits relief against [Judge] Diraimondo to the extent permitted by law." ECF No. [51] at 13. Moreover, if the Court determines that Amal Crane's damages claims against Judge Diraimondo are barred, this would not entail dismissal of all claims; alternatively, Amal Crane should be allowed to amend the Complaint to clarify her claims. *Id.* Judge Diraimondo replies that Amal Crane "does not address how Defendant acted outside the scope of her judicial capacity," nor does she address how the state appellate procedures are inadequate," thereby conceding judicial immunity. ECF No. [55] at 4.

Here, the Court finds that judicial immunity plainly applies to bar all of Amal Crane's claims against Judge Diraimondo. All acts complained of constitute normal judicial functions—ruling on motions, appointing social investigators, making evidentiary findings, setting courtroom procedures, and other standard judicial acts. All of these alleged acts occurred on the record, generally in open court. All of the alleged acts involved the same case pending before Judge Diraimondo. And all of the alleged claims arise out of some interaction between Amal Crane and Judge Diraimondo while Judge Diraimondo was operating in her official capacity. No amount of repleading could change what is patently clear—Amal Crane takes issue with judicial decisions made by Judge Diraimondo, none of which were made "in the clear absence of all jurisdiction." *Bolin*, 225 F.3d at 1239. Thus, all claims against Judge Diraimondo—for damages, injunctive relief, and declaratory relief alike—will be dismissed with prejudice, and Diraimondo's Motion is granted.

## B. Crane's Motion

*Younger* abstention applies to bar interference with ongoing state proceedings. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989). Pursuant to this doctrine, "when important state interests are involved" in a proceeding—that is, when the proceedings implicate "important state policies"—"a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (citation omitted). There are three key questions to determining whether Younger abstention applies: (1) whether the proceedings constitute an "ongoing state judicial proceeding," (2) whether the proceedings "implicate important state interests," and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (emphasis omitted).

Case No. 26-cv-23144-BLOOM

The Court begins by recounting Amal Crane's claims against Matthew Crane, Hertz, and Sager, which include the following:

- Count I: Amal Crane alleges that she engaged in protected First Amendment activity "by filing motions, petitions, and appeals" in the State Action, "including motions to enforce the appellate mandate, to compel financial discovery, to discharge void judgment liens, and to seek prohibition from the Third District Court of Appeal." ECF No. [1] ¶ 150. Amal Crane alleges that Crane, Hertz, and Sager retaliated against her by filing a Motion to Compel Enforcement of Administrative Order No. 26-04, filing a Verified Emergency Motion seeking to prohibit Amal Crane from filing *pro se* motions without attorney supervision, filing a Motion for Court to Enter Order as a Result of Mandate on April 27, 2026, and making certain statements on the record about the goals of litigation. *Id.* ¶ 151(a)–(d).
- Count II: Amal Crane alleges that Hertz and Sager "acted jointly with state actors" to deprive her of her procedural due process rights. *Id.* ¶ 156. Amal Crane does not explain how either attorney did so. *See generally id*.
- Count III: Amal Crane alleges that Matthew Crane, Hertz, and Sager deprived her of her substantive due process rights through "coordinated conduct" including "a Stipulation signed under conditions of duress, financial exhaustion, and prolonged separation" and "the coordinated institutional exclusion from educational, medical, and therapeutic information." *Id.* ¶ 167.
- Count VII: Amal Crane alleges that all Defendants, including Matthew Crane, Hertz, and Sager, "formed and participated in a conspiracy to deprive" her of constitutional and other rights in violation of 42 U.S.C. § 1985(3), motivated in part by sex-based and disability-based animus. *Id.* ¶ 196. Specifically, Amal Crane points to a text from Matthew Crane proposing a settlement that was materially similar to an email sent by the court—appointed Parenting Coordinator; statements by Matthew Crane describing the child as doing well; and Amal Crane's "exclusion from educational, medical, and therapeutic information concerning the minor child." *Id.* ¶ 198.
- Cout VIII: Amal Crane alleges that Matthew Crane, Hertz, and Sager engaged in "abuse of process" by using "legal procedures for purposes other than the legitimate resolution of disputes." *Id.* ¶ 201. She alleges that their actions were taken to "impose financial pressure, delay mandate compliance, burden [Amal Crane]'s access to the courts, and chill [Amal Crane]'s continued pursuit of custody, discovery, appellate, and constitutional remedies." *Id.* ¶ 203. Moreover, Amal Crane alleges that Matthew Crane, Hertz, and Sager committed Intentional Infliction of Emotional Distress and Civil Conspiracy. *Id.* ¶¶ 205, 206.

Matthew Crane, Hertz, and Sager argue, in relevant part,[2] that *Younger* abstention bars Amal Crane's claims for prospective relief, as "[a]ll three *Younger* factors are indisputably satisfied here." ECF No. [33] at 6–7. Moreover, Counts I through III fail because Matthew Crane, Hertz, and Sager are not state actors. *Id.* at 10–13. Count VII for § 1985(3) conspiracy fails because Amal Crane fails to allege any facts suggesting class-based, discriminatory animus based on a protected characteristic and because lawyers cannot be in a conspiracy with their clients. *Id.* at 13–15. Finally, the Court should decline supplemental jurisdiction over Amal Crane's state law claims once her federal claims are dismissed. *Id.* at 20–21.

Amal Crane responds that *Younger* does not bar her claims because the Complaint clearly alleges that she used state remedies which were insufficient. ECF No. [48] at 8. Moreover, *Younger* abstention does not require dismissal of her claims for damages. *Id*. Next, Amal Crane argues that she has plausibly alleged "joint action and state-action theories at the pleading stage," having points to a "sequence" of suspect actions. *Id.* at 9. Furthermore, she argues that the Complaint alleges that Matthew Crane, Hertz, and Sager "used state-created authority and court-integrated mechanisms in a coordinated sequence with state and court-appointed actors." *Id.* at 11. As to her § 1985(3) claim, Amal Crane argues that the Complaint properly alleges sex-based and disability-based distinctions in treatment amounting to a conspiracy. *Id.* at 16. As to her state law claims, Amal Crane argues they should not be dismissed at this stage. *Id.* at 17–18.

Matthew Crane, Hertz, and Sager reply that *Younger* abstention applies, the Complaint fails to adequately allege state action, and the Complaint fails to allege class-based animus, plead a discriminatory purpose, or plead a plausible agreement. ECF No. [67].

---

[2] The Court finds that the claims brought against Matthew Crane, Hertz, and Sager are either barred by *Younger* abstention or otherwise plainly fail to state a claim. As such, the Court does not reach Matthew Crane, Hertz, or Sager's additional grounds for dismissal.

The Court finds that Amal Crane's claims against Matthew Crane, Hertz, and Sanger all fail. Insofar as Plaintiff alleges that the State Action is ongoing, ECF No. [1] ¶ 22(A), the Court finds Amal Crane's claims for injunctive relief barred by *Younger* abstention. First, it appears that appeals may well still be pending. *See* ECF No. [1] ¶ 22(A). Second, child custody represents one of the most important state interests. *31 Foster Children*, 329 F.3d 1255, 1275 (11th Cir. 2003). Finally, there is a lack of sufficient allegations that Amal Crane would not have an adequate remedy for her federal claims in state court, and the burden is on Plaintiff to point to some inadequacy. *Butler v. Ala. Judicial Inquiry Comm'n*, 261 F.3d 1154, 1159 (11th Cir. 2001).

Indeed, Amal Crane points to her efforts in state court: "she appealed, obtained reversal, filed the mandate, served mandate-related discovery, moved to compel, moved to discharge liens, opposed efforts to re-enter the reversed award, preserved ADA objections, pursued reconsideration, and preserved federal rights." ECF No. [48] at 8. Those examples are not tantamount to raising the constitutional or statutory challenges that she raises here. There is no allegation that she has done so and no allegation that the state court would be an insufficient forum in which to seek redress for her federal claims. Thus, *Younger* abstention plainly applies.

On the merits, Amal Crane fails to state a claim against Matthew Crane, Hertz, or Sager— whether for injunctive relief, damages, or any other relief., She fails to adequately allege state action as would be required to support her claims.

> Only in rare circumstances can a private party be viewed as a "state actor" for section 1983 purposes. The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test.

*Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

> The public function test limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state. The state compulsion test limits state action to instances where the government has coerced

> or at least significantly encouraged the action alleged to violate the Constitution. The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise.

*Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).

Here, the facts alleged in the Complaint against Matthew Crane, Hertz, and Sager do not satisfy any of these three tests. Defendants Hertz and Sager are merely private attorneys who "engaged in the state-court process and obtained court orders," which "is insufficient to make them state actors." *Yeh Ho v. Sabocik*, 775 F. App'x 551, 554 (11th Cir. 2019) (citing *Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1251 (11th Cir. 1985)). Matthew Crane is a private citizen enmeshed in a custody dispute. Amal Crane alleges nothing beyond ordinary activities of a private litigant and his lawyers, which cannot support a finding of state action. Indeed, "[f]or purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey*, 949 F.2d at 1133. Plaintiff fails to do so, instead using conclusory labels devoid of any allegation of actual state action. Plaintiff, therefore, fails to establish that Matthew Crane, Hertz, and Sager are state actors under section 1983. *See Schucker v. Rockwood,* 846 F.2d 1202, 1205 (9th Cir. 1988) ("Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." (citation omitted)). Thus, Count I, II, and III will be dismissed with prejudice for failure to state a claim.

Moreover, Amal Crane has not stated a claim for a conspiracy in violation of § 1985(3). The Eleventh Circuit has clearly articulated the four elements of a § 1985(3) claim:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4)

> whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Trawinski v. United Technologies*, 313 F.3d 1295, 1299 (11th Cir. 2002). But, among other failures, the Complaint fails to allege sufficient facts to support an inference that a conspiracy existed. Indeed, the Complaint is rife with "labels and conclusions," "conclusory statements," and "naked assertions devoid of further factual enhancement" regarding the alleged conspiracy. *Twombly*, 550 U.S. at 555, 127; *Iqbal*, 556 U.S. at 678–80. Those kinds of statements—most prominently mere allegations that the state court ruled more favorably on Matthew Crane's motions than on Amal Crane's motions—are not sufficient to allege an actual agreement between the parties. *See, e.g., Cox v. Mills*, 465 F. App'x 885, 888 (11th Cir. 2012) (affirming Rule 12(b)(6) dismissal of § 1983 and § 1985 claims when the complaint lacked "a sufficient factual basis for the court to proceed toward a finding that [defendant] and the state court judges agreed to violate [plaintiff's] civil rights," and "merely point[ed] to instances where" plaintiff believed that the judges favorably disposed of defendant's "allegedly improper pleadings").

And in the absence of federal jurisdiction, the Court finds dismissal of Plaintiff's state law claims against Matthew Crane, Hertz, and Sager in Count VIII warranted. *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999) ("The federal courts of appeals, however, have uniformly held that once the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, courts must dismiss a plaintiff's state law claims." (citations omitted)). Thus, all claims against Matthew Crane, Hertz, and Sager will be dismissed with prejudice, and Crane's Motion is granted.

### C. Simon's Motion

The Court begins by recounting Amal Crane's claims against Simon, which include the following:

- Count I: Amal Crane alleges that she engaged in protected First Amendment activity "by filing motions, petitions, and appeals" in the State Action, "including motions to enforce the appellate mandate, to compel financial discovery, to discharge void judgment liens, and to seek prohibition from the Third District Court of Appeal." ECF No. [1] ¶ 150. Amal Crane alleges that Simon retaliated against her, but she does not specify any actions taken by Simon. *See generally id.*
- Count II: Amal Crane alleges that she was deprived of her procedural due process rights when Simon accepted appointment with a formal engagement letter within three hours of being appointed as social investigator and when Simon introduced "adverse, undisclosed characterizations" of Amal Crane at his deposition, which was conducted in Amal Crane's absence. *Id.* ¶ 158(a), (b).
- Count III: Amal Crane alleges that Simon violated her substantive due process rights, including through a "procedurally tainted social investigation." *Id.* ¶ 167.
- Count VII: Amal Crane alleges that all Defendants, including Simon, "formed and participated in a conspiracy to deprive" her of constitutional and other rights in violation of 42 U.S.C. § 1985(3), motivated in part by sex-based and disability-based animus. *Id.* ¶ 196. Specifically, Amal Crane points to Simon introducing "adverse, undisclosed characterizations" of her mental health at his deposition, even though these characterizations do not appear in his written report, were not disclosed before the deposition, and were later used in proceedings affecting Amal Crane's parental access. *Id.* ¶ 197(a). Amal Crane alleges a conspiracy based, in relevant part, on Simon's appointment and same-day engagement, as well as his deposition testimony "describing collateral sources" favorably. *Id.* ¶ 198 (c), (d).
- Count VIII: Amal Crane alleges that Simon committed Intentional Infliction of Emotional Distress by "introducing undisclosed psychiatric labels at a deposition conducted without [Amal Crane] or her counsel present." *Id.* ¶ 205. She also asserts a claim for Civil Conspiracy. *Id.* ¶ 206.

Simon argues, in relevant part, argues that Amal Crane's claims against him must be dismissed, first, because he is not a state actor and is therefore not subject to suit under § 1983 and, second, because Amal Crane fails to state a claim. ECF No. [38] ¶¶ 28–42.

Amal Crane responds that her Complaint adequately alleges that Simon was a state actor because of the "combined court-created process and downstream use" of Simon's work, which shows "fair attribution" to the state. ECF No. [49] at 10. Moreover, Amal Crane argues that she has adequately pled procedural due process violations, in part because Simon's deposition occurred in her absence and without her cross-examination and because Amal Crane lacked the ability to meaningfully test or rebut the basis of Simon's opinion. *Id.* at 14. Moreover, Amal Crane contends that she has adequately alleged a substantive due process violation in the form of a "court-

created report process and recommendations" that ultimately affected her parent-child relationship. *Id.* at 16. Next, Amal Crane argues that she has plausibly alleged First Amendment retaliation, as her "litigation positions and objections were recast through the professional/report framework." *Id.* at 17. Finally, Amal Crane argues that her § 1985 and state-law claims survive, as she has adequately alleged discriminatory animus, and her state law claims benefit from supplemental jurisdiction. *Id.* at 19.

The Court finds that even if Simon is understood to be a state actor, Amal Crane has not stated a claim for any constitutional or statutory violations by him. As to Count I, Amal Crane alleges that Simon retaliated against her, but she does not specify any actions taken by Simon. ECF No. [1] ¶ 146–53. Indeed, Count I makes no reference to any actions taken by Simon at all and certainly does not elucidate a logical basis for characterizing Simon's actions as "retaliation" for protected speech. Thus, Count I is dismissed with respect to Simon for failure to state a claim.

In Count II, Amal Crane alleges that she was deprived of her Fourteenth Amendment procedural due process rights when Simon accepted appointment with a formal engagement letter within three hours of being appointed as social investigator and when Simon introduced "adverse, undisclosed characterizations" of Amal Crane at his deposition, which was conducted in Amal Crane's absence. *Id.* ¶ 158(a), (b). Neither of these constitutes a constitutional injury. There is certainly no cognizable constitutional injury in Simon accepting an appointment quickly. Moreover, there is no constitutional injury in Simon rendering the opinion which he was appointed to render; Amal Crane points to no legal authority that using different terminology than appears in a written report is a constitutional violation. Finally, to state a cause of action pursuant to 42 U.S.C. § 1983, a plaintiff must allege: "1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights secured by the

Constitution or laws of the United States." *Morrison v. Washington Cnty.*, 700 F.2d 678, 682 (11th Cir. 1983) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1978)). Thus, the plaintiff must show that the particular defendant's actions actually and proximately *caused* a deprivation of her procedural due process rights. *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000) (a plaintiff asserting a § 1983 "constitutional tort" claim must meet the same standard of causation required in a common law tort claim); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (§ 1983 "plainly requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation"). Here, even if there were a deprivation of constitutional dimensions in Amal Crane's absence from Simon's deposition, there is no allegation that *Simon* caused her exclusion. Indeed, given Simon's role within the court proceedings, it defies logic to attribute to him responsibility for any lack of process experienced by Amal Crane in the deposition. Thus, Count II is dismissed with respect to Simon for failure to state a claim.

In Count III, Amal Crane alleges that Simon violated her substantive due process rights to parent-child association. ECF No. [1] ¶ 163–65. The only allegation in this count that appears to involve Simon is the allegation of a "procedurally tainted social investigation." *Id.* ¶ 167. This statement is far from sufficient to support a claim of a substantive due process violation. Moreover, as discussed above, critical to the § 1983 analysis is the element of causation—that the defendant have caused the constitutional injury. Here, there is no allegation that Simon himself interfered with Amal Crane's parental rights. Certainly, he is alleged to have provided information and opinion to the Court, but Amal Crane's allegations plainly make clear that it was the state court, not Simon, that made decisions regarding care and custody of the minor children. Thus, Count III is dismissed with respect to Simon for failure to state a claim.

Count VII alleges a conspiracy to deprive Amal Crane of her constitutional and statutory rights in violation of 42 U.S.C. § 1985(3), motivated in part by sex-based and disability-based animus. ECF No. [1] ¶ 196. But again, none of what is alleged by Amal Crane states a claim for a violation of § 1985. First, Amal Crane points to Simon introducing "adverse, undisclosed characterizations" of her mental health at his deposition, even though these characterizations do not appear in his written report, were not disclosed before the deposition, and were later used in proceedings affecting Amal Crane's parental access. *Id.* ¶ 197(a). Again, as above, it is entirely unclear how statements made at a deposition constitute a constitutional violation or why Simon was bound by the exact phrasing in his report. It is similarly unclear where the constitutional injury arises when a court-appointed social investigator's report and deposition are used in court proceedings. These actions simply do not constitute a constitutional injury. Similarly, "describing collateral sources" favorably is not a constitutional violation. *Id.* ¶ 198(d).

More significantly, Amal Crane alleges no facts that support a finding of a conspiracy—she points to Simon's same-day appointment and acceptance, which falls well within standard court procedures and does not at all support an inference of wrongdoing. And beyond these issues, the Eleventh Circuit "requires a showing of some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions" to make out a successful § 1985(3) claim. Lucero v. Operation Rescue, 954 F.2d 624, 628 (11th Cir. 1992). The Eleventh Circuit "repeatedly [has] declined to extend [§ 1985(3)] to apply in non-racial contexts." *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (citations omitted); *see also Robb v. Rahi Real Estate Holdings LLC*, 2011 WL 2149941, at *4 (S.D. Fla. May 23, 2011) ("[Section] 1985 is limited to actions for discrimination based on race or another protected class."). Here, beyond her mere conclusory say-so, ECF No. [1] ¶ 196, Amal Crane offers no factual allegations

to support that Simon's actions were based on discriminatory animus. The existing "vague and conclusory" allegations are insufficient. *Grappell v. Carvalho*, 847 F. App'x 698, 702 (11th Cir. 2021). Thus, Count VII is dismissed with respect to Simon for failure to state a claim.

And, as above, in the absence of federal jurisdiction, the Court finds dismissal of Plaintiff's state law claims against Simon in Count VIII warranted. *Scarfo*, 175 F.3d at 962 ("The federal courts of appeals, however, have uniformly held that once the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, courts must dismiss a plaintiff's state law claims." (citations omitted)). Thus, Simon's Motion is granted, and all claims against Simon are dismissed.

### D. Trainor's Motion

Finally, the Court turns to the allegations brought against Trainor, which include the following:

- Count I: Amal Crane alleges that she engaged in protected First Amendment activity "by filing motions, petitions, and appeals" in the State Action, "including motions to enforce the appellate mandate, to compel financial discovery, to discharge void judgment liens, and to seek prohibition from the Third District Court of Appeal." ECF No. [1] ¶ 150. Amal Crane alleges that Trainor retaliated against her, but she does not specify any actions taken by Trainor. *See generally id*.
- Count II: Amal Crane alleges that she was deprived of her procedural due process rights when Trainor engaged in pre-appointment casework and received an *ex parte* telephone call from the bench before any lawful order existed. *Id.* ¶ 158(a).
- Count III: Amal Crane alleges that Trainor deprived her of her substantive due process rights through "coordinated conduct" including "the back-dated GAL appointment," "the failure to enforce the stipulated resumption of contact," and "the coordinated institutional exclusion from educational, medical, and therapeutic information." *Id.* ¶ 167.
- Count IV: Amal Crane alleges that Trainor subjected her to different treatment based on her sex and disabilities. *Id.* ¶ 173. Specifically, Trainor used artificial intelligence to transcribe recordings of the minor child and "mobilized within hours an emergency response when [Amal Crane] reported that F.C. had a minor illness," both of which represented different treatment from that afforded to other parties. *Id.* ¶ 174(b), (c).
- Count VII: Amal Crane alleges that all Defendants, including Trainor, "formed and participated in a conspiracy to deprive" her of constitutional and other rights in

violation of 42 U.S.C. § 1985(3), motivated in part by sex-based and disability-based animus. *Id.* ¶ 196. Specifically, she points to the following actions by Trainor as evidence of a conspiracy: Trainor's pre-appointment casework and court-initiated telephone call and Trainor's statements that the child was doing well. *Id.* ¶ 198(b), (e).

- Count VIII: Amal Crane alleges that Trainor committed Intentional Infliction of Emotional Distress by knowing that another mental health counselor threatened Amal Crane's minor child with institutionalization if he expressed love for his mother. *Id.* ¶ 205. She also asserts a claim for Civil Conspiracy. *Id.* ¶ 206.

Trainor argues that the *Rooker-Feldman* doctrine, *Younger* abstention, and judicial immunity bar Amal Crane's claims against Trainor, and in any event, Amal Crane fails to state a claim for any constitutional or statutory violations. ECF No. [42].

Amal Crane responds that *Rooker-Feldman* does not bar her claims, as she "does not ask this Court to modify custody, set timesharing, or sit as a family appellate court." ECF No. [50] at 10. Instead, she alleges "independent federal injuries." *Id*. Similarly, *Younger* abstention does not require dismissal, as Amal Crane "does not ask this Court to manage the family case or supervise Trainor's daily GAL functions. [Amal Crane] alleges independent federal injuries and seeks only legally available relief." *Id.* at 11. Next, no immunity standard requires dismissal, as Amal Crane's allegations go beyond core guardian *ad litem* activities. *Id.* at 12. Finally, Amal Crane argues that her allegations are plausible and sufficient. *Id.* at 12–25.

Trainor replies that "no argument is made" that she "acted outside the scope of her role as [g]uardian ad litem." ECF No. [56].

The Court finds that it can resolve Trainor's Motion solely on the basis of immunity. While judicial immunity extends to judges "for those acts taken while they are acting in their judicial capacity," *Bolin*, 225 F.3d at 1239, the Eleventh Circuit has held that such immunity similarly extends to those whose "official duties have an integral relationship with the judicial process" and who are acting within the scope of those duties. *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (quotation omitted). That includes guardians *ad litem*, who are entitled to absolute immunity

from suit. *See Dolin ex rel. N.D. v. West*, 22 F. Supp. 2d 1343, 1349-50 (M.D. Fla. 1998), aff'd, 207 F.3d 661 (11th Cir. 2000); *see also Hill v. Manning*, No. 1:21-CV-04549-SDG, 2022 WL 4361822, at *5 (N.D. Ga. Sept. 20, 2022) (concluding that guardian ad litem was entitled to absolute immunity because the guardian ad litem role "ha[s] an integral relationship to the judicial process"); *Coleman v. Fla. Dep't of Child. & Fam. Servs.*, No. 14-61019-CIV, 2017 WL 11886003, at *13 (S.D. Fla. Aug. 16, 2017), *adopted sub nom. Coleman v. Guerrero*, No. 14-61019-CIV, 2017 WL 11885998 (S.D. Fla. Sept. 28, 2017) ("Absolute immunity also protects witnesses, court appointed psychologists, and guardians ad litem who are sued in their individual capacities under § 1983.").

Here, the allegations in the Complaint indicate that Trainor was within her official capacity at the time she allegedly took the complained-of actions, which largely boil down to casework. That is, the allegations all directly relate to her role as a guardian *ad litem*, which had "an integral relationship to the judicial process." *Hill*, 2022 WL 4361822, at *5. Accordingly, the claims brought against Defendant Trainor are barred by absolute immunity and will be dismissed.

### E.  Leave to Amend the Complaint

"A district court need not . . . allow an amendment . . . where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Indeed, the law in this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004); *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (same); *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1343 (S.D. Fla. 2014) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." (citation omitted)). This is true for *pro se* plaintiffs as well. *See*

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (a pro se plaintiff need not be granted leave to amend "where the plaintiff has indicated that he does not wish to amend his complaint, or (2) if a more carefully drafted complaint could not state a claim." (citation and quotations omitted)).

Here, the Court finds that any amendment of the Complaint "would necessarily fail*." St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). Judge Diraimondo would still be shielded by judicial immunity, Matthew Crane, Hertz, and Sager would still be private actors not subject to suit under § 1983 or part of a conspiracy, Simon's actions would still not constitute a constitutional or statutory injury, and Trainor would still be immune from suit given her affiliation with the Court. As such, the Court will not grant leave to amend.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant Christina Marie Diraimondo's Motion to Dismiss, **ECF No. [29]**, is **GRANTED**.

2.  , Defendants Matthew Harrison Crane, Christy L. Hertz, Esq., and Katie Sager, Esq.'s Motion to Dismiss, **ECF No. [33]**, is **GRANTED**.

3.   Matthew Simon's Motion to Dismiss, **ECF No. [38]**, is **GRANTED**.

4.  Defendant Diane M. Trainor's Motion to Dismiss, **ECF No. [42]**, is **GRANTED**.

5.  Amal Crane's Motion for Preliminary Injunction, **ECF No. [3]**, is **DENIED AS MOOT**.

6. Amal Crane's Renewed Consolidated Motion for Leave to Correct Material Reply-State Mischaracterizations in Defendant Judge Diraimondo's Reply [] and Defendant Diane M. Trainer's Reply [], **ECF No. [66]**, is **DENIED**.

7. The above-styled case is **DISMISSED** and **WITHOUT LEAVE TO AMEND**.

8. The Clerk of the Court is directed to **CLOSE** this case.

9. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 16, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record